1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   TOMMY HENDERSON,                     No. 2:12-CV-0043-CMK-P

12              Petitioner,

13        vs.                            <u>MEMORANDUM OPINION AND ORDER</u>

14   MICHAEL MARTEL,

15              Respondent.

16   _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to the written consent of all parties, this

19   case is before the undersigned as the presiding judge for all purposes, including entry of final

20   judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending before the court are petitioner's amended petition

21   for a writ of habeas corpus (Doc. 15), respondent's answer (Doc. 22), and petitioner's traverse

22   (Doc. 23).

23   / / /

24   / / /

25   / / /

26   / / /

# I. BACKGROUND[1]

Petitioner was convicted of oral copulation by force and attempted solicitation of a crime, and was sentenced to an aggregate determinate term of 11 years in state prison. The conviction and sentence were affirmed on direct appeal in a reasoned decision issued by the California Court of Appeal on July 8, 2008. The state court offered the following procedural history:[2]

> In the initial trial of this matter, a jury deadlocked on whether defendant Tommy Henderson committed an act of forcible oral copulation, and acquitted him of the remaining charged offenses; it convicted him of a lesser offense of attempting to bribe the victim. On retrial, a second jury convicted him of forcible oral copulation. Based on his substantial criminal history, Judge White sentenced him to the upper term for forcible oral copulation. Judge Balonon, who presided over the first trial, subsequently designated the attempted bribery conviction as the principal term, imposed the upper sentence based in part on his prior unsatisfactory performance on probation and parole, then imposed a full consecutive sentence for the sexual offense based on its occurrence at a different time and place and on defendant's criminal background. Neither of the trial judges found any mitigating circumstances.

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> The events underlying the conviction for oral copulation took place in March 1996. The victim testified at both trial that defendant approached her parked car, took control of it at gunpoint, forced her to orally copulate him several times while he drove, and eventually pushed her out of the car (which the police found abandoned the next day). Although the victim had rinsed out her mouth after the attack, swabs taken that night eventually were subjected to DNA analysis in 2003, resulting in a tentative DNA match with defendant (later confirmed in 2004).

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

[2] In subsequent consolidated appeals, the California Court of Appeal affirmed a June 24, 2010, trial court order correcting an error in the original sentence with instructions to prepare a corrected abstract of judgment with respect to petitioner's conviction for attempted solicitation.

Defendant testified at both trials. Each time, he asserted that his encounter with the victim was a consensual trade of sex for drugs. She drove him to a parking lot, where she orally copulated him. He ejaculated in her mouth despite having assured her that he would not. This angered her and she jumped out of the car. He slid over to the driver's seat and drove off in order to retain the benefit of the proposed deal without parting with his product.

* * *

As defendant was awaiting his first trial, the attorney of his cellmate notified detectives that defendant had been talking to the cellmate about wanting to prevent the victim from testifying. A detective went to the jail (with the permission of the attorney) to interview the cellmate. The cellmate told the detective that defendant had begun to talk about the pending charges against him, expressing concern that the DNA evidence and the testimony of the witness would lead to his conviction. He stated his willingness to pay $4,000 for someone to get rid of the victim (out of an inheritance that he was anticipating), and that he was trying to get in touch with his son to arrange this. He mentioned learning the address of the victim from discovery documents. The detective told the cellmate that regardless of the result of this information, there would not any form of benefit in exchange to the cellmate in his own pending case. (Footnote omitted). The cellmate nonetheless was willing to work with the detective (stating at trial that he was feeling regret about the death in the case in which he was involved, and wanted to prevent harm from happening to someone else).

In his second meeting with the detective, the cellmate agreed to wear a recording device when he returned to their cell. (Footnote omitted). Because defendant had been having trouble contacting his son about silencing the victim, the cellmate told him about a fictitious "hit man" named "Slim," whom defendant's daughter could arrange to contact.

A deputy posing a Slim met at the jail with defendant and recorded their conversation (again, the jury heard the tape of this meeting). The decoy was unable to get defendant to incriminate himself; in fact, defendant broke off the parlay and returned to his cell. After covering a microphone in their cell with a pack of cards. Defendant told his cellmate that he had met with Slim and intended to have his daughter contact Slim again. The cellmate obtained a phone number to use from the detective, written on a small piece of paper that the cellmate left on the cell's windowsill. The cellmate was not sure what happened to the piece of paper.

On two occasions when defendant's daughter visited him at the jail, she copied identifying information about the victim from a court document that defendant pressed against the glass. After he had met with Slim, defendant told her to pass the identifying information on to her brother, who would be dealing with Slim. Slim later called her directly, however. Having misplaced the written information about the victim, she

3

told him what she could remember on it.  The police arrested her and searched her home, finding another paper on which she had also copied the information about the victim.

The detective in charge of the sting ordered a search of defendant's cell on the night of the daughter's arrest.  The police seized defendant's Bible, which contained a piece of paper bearing Slim's name and the phone number that the detective had given the cellmate; the handwriting was not the detective's.  They also seized documents from defendant's papers that had information about the victim corresponding to that found in his daughter's possession, as well as a two-page investigative report prepared for the defense that apparently only included her name and her husband's.

* * *

Before the first trial, the prosecution moved to exclude evidence that it believed the defense intended to introduce regarding the victim's January 2005 arrest for being drunk in public, which resulted when the police had discovered the now-married victim kissing an old friend in the back seat of a car after they had been drinking in a bar.  The prosecution noted it had not received any written notice of the intent to introduce evidence of the victim's sexual conduct. . ., and that it was more prejudicial than probative. . . .  The defense responded with a formal motion to admit the evidence.  The motion noted that the car had been parked outside a grocery store, and that the victim had told a detective in the case at bar that she had never informed her husband of the arrest, for which reason she did not want it revealed at trial (although she ultimately spoke to him about it as a result).  The defense argued that the incident indicated her willingness to engage in less-than-circumspect behavior in public, and was also relevant to her veracity.  Judge Balonon granted the motion to exclude the evidence except in connection with the attempted bribery of the victim.  As a result, defendant was permitted to testify that he knew the details of the incident, which made him believe that she would be receptive to an inducement not to testify in order to keep her husband from learning of the circumstances of the arrest.  Defendant also asserted his belief that the incident showed the victim's "promiscuous" character and her lack of honesty.  (Footnote omitted).

Before the start of the second trial, the defense renewed its motion to introduce this evidence, reiterating the points previously presented without embellishment about the incident's relevance to the victim's veracity and willingness to act inappropriately in public (to overcome any presumption on the part of a jury that a woman would not behave in this manner).  Judge White found the comparison between performing a sex act in public and kissing in public nine years later too attenuated to provide any insight on the victim's likely behavior in 1996, and her initial failure to tell her husband about the arrest insufficiently mendacious to reflect on her capacity to tell the truth.  Judge White therefore denied the motion to admit the incident for any purpose without prejudice in the event of new evidence.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).  For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings.  See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards.  A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S. 510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.  The federal habeas court assumes that state court applied the correct law and analyzes whether

1 the state court's summary denial was based on an objectively unreasonable application of that

2 law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

3

4                                     **III.  DISCUSSION**

5          Petitioner asserts the following claims: (1) the seizure, and later use at trial, of

6 materials obtained from a search of his jail cell as a pre-trial detainee violated his Fourth

7 Amendment rights; (2) the introduction at trial of materials seized from his jail cell while a pre-

8 trial detainee violated the attorney-client privilege and his Sixth Amendment right to counsel;

9 (3) the trial court erred in limiting his cross-examination of a prosecution witness; (4) the trial

10 court erred in excluding proffered impeachment evidence; (5) the evidence was insufficient to

11 establish the use of force; and (6) "illegal sentence."

12          **A.      Fourth Amendment Claim**

13          In Stone v. Powell, the United States Supreme Court held that "where the State

14 has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

15 prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in

16 an unconstitutional search or seizure was introduced at his trial."  428 U.S. 465, 494 (1976).

17 Thus, a Fourth Amendment claim can only be litigated on federal habeas where petitioner

18 demonstrates that the state did not provide an opportunity for full and fair litigation of the claim;

19 it is immaterial whether the petitioner actually litigated the Fourth Amendment claim.  Gordan v.

20 Duran, 895 F.2d 610, 613 (9th Cir. 1990).  The issue before this court is whether petitioner had a

21 full and fair opportunity in the state courts to litigate his Fourth Amendment claim, not whether

22 petitioner actually litigated those claims, nor whether the state courts correctly disposed of the

23 Fourth Amendment issues tendered to them.  See id.; see also Siripongs v. Calderon, 35 F.3d

24 1308 (9th Cir. 1994).

25 / / /

26 / / /

1    The court agrees with respondent that, because the record establishes that the state

2    court heard and considered petitioner's Fourth Amendment argument, federal habeas relief is

3    unavailable on this claim.  See Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005).

4    **B.**    **Sixth Amendment and Privilege Claims**

5    In addressing this claim on direct appeal, the California Court of Appeal stated:

6         This leaves defendant's motion to dismiss and suppress because
     the seizures interfered with is right to counsel.  Defense counsel had
7    argued at the hearing that the officers investigating the underlying crime
     could have had access to the investigator's report through the department's
8    record system, and the detective's failure to seize the items for a
     magistrate's review rather than his own resulted in a violation of the
9    attorney-client privilege because the information to which he had access
     must be imputed to the prosecution.  The court did not dispute that it
10   would have been preferable to have a magistrate review the folder rather
     than the detective, and that there was a violation of defendant's right to
11   effective counsel in this search and in the seizure of the investigator's
     report.  However, in its review of the report, the court did not find
12   anything that would have a negative impact on the defense of the
     underlying crime or counsel's effectiveness.  Given the absence of any
13   prejudice (the trial court expressly crediting the detective's claim that he
     did not recall any of the information he had scanned or impart it to the
14   prosecution), dismissal was not necessary, nor suppression of anything
     other than the already sealed report (and the direction to remove it from
15   the records system).

16   The court agrees with respondent that the state court's rejection of this claim was

17   neither contrary to nor based on an unreasonable application of applicable federal law.  In

18   Weatherford v. Bursey, the Supreme Court held that, under the Sixth Amendment, the attorney-

19   client privilege protects communications between the defendant and his attorney from intrusion

20   by the government.  See 429 U.S. 545 (1997).  Intrusion is improper only where it results in

21   substantial prejudice to the defendant.  See United States v. Danielson, 325 F.3d 1054 (9th Cir.

22   2003).  Mere intrusion without substantial prejudice is insufficient.  See id. at 1069.  Substantial

23   prejudice occurs where the prosecution uses protected information to gain an unfair advantage.

24   See id.  Here, petitioner has failed to demonstrate that the prosecution gained any unfair

25   advantage.  Specifically, the state court determined that the detective's testimony that he did not

26   impart the contents of the seized report to the prosecution was credible, and petitioner has not

1    met his burden of producing clear and convincing evidence to rebut the presumption that this

2    finding is correct.

3    **C.      Cross-Examination Claim**

4           Petitioner contends that the trial court impermissibly limited his cross-

5    examination of his cellmate.  The state court addressed this claim as follows:

6           At the outset of cross-examining the cellmate, the defense attorney
     began questioning him about his motivation for his coming forward and
7    making a statement to the police about the murder in which he was
     involved.  After the cellmate said that he wanted to tell the truth and
8    receive punishment commensurate with his limited involvement, defense
     counsel asked in a sidebar for permission to establish the extent of the
9    cellmate's complicity in the murder to show that it was more than
     marginal and therefore counter any impression that the cellmate had
10   cooperated with the police in his own murder case only on altruistic
     grounds.  The prosecutor opposed the request as exceeding the scope of
11   issues relevant in the present proceedings.  The trial court agreed with the
     prosecutor.  Defense counsel also unsuccessfully sought to obtain
12   permission to establish inconsistencies between the initial statement of the
     cellmate to the police in the murder case and the actual facts to impeach
13   the cellmate's veracity.

14                              * * *

15          Defendant contends that this restriction on his cross-examination
     of the witness violated his constitutional rights.  A court's informed
16   exercise of its discretion to restrict cross-examination on issues that are
     repetitive, marginal, confusion, or unduly prejudicial does not violate any
17   trial rights under the constitution except where the restriction would leave
     the jury with a significantly different impression of the credibility of the
18   witness. (citations omitted).

19          There were significant challenges raised to the cellmate's veracity
     even without the excluded matters.  He admitted having several previous
20   convictions for crimes directly reflecting his dishonesty, as well as his
     pending crime reflecting at least a readiness to do evil.  The jury was also
21   aware that by the time of trial he had an expectation that his cooperation
     would earn him good will in his own case.  The extent to which he may
22   have been dishonest with the police in the murder case, or the extent to
     which he acted out of self-interest in cooperating in the case, were only
23   cumulative at the margins of matters already before the jury.  We therefore
     conclude that the court properly exercised its discretion, which did not
24   violate any constitutional right.

25   ///

26   ///

1    The state court's decision was neither contrary to nor based on an unreasonable

2    application of established law.  Under clearly established Supreme Court precedent, a criminal

3    defendant has the right to effective cross-examination.  See Delaware v. Van Arsdall, 475 U.S.

4    673 (1986).  Effective cross-examination requires that the defense be allowed to expose a

5    witness's bias and motivation to lie.  See id. at 678-79.  The trial court must allow questioning on

6    an issue if the proposed testimony could leave a reasonable jury significantly different impression

7    of the witness's credibility.  See id. at 680.  Here, as the state court observed, the proposed

8    testimony was cumulative of other evidence already before the jury, and would not have left a

9    significantly different impression of the cellmate's credibility.  Therefore, the state court

10   correctly concluded that the trial did not err by excluding the proposed cross-examination.  See

11   Olden v. Kentucky, 488 U.S. 227 (1988).

12          **D.      Impeachment Evidence Claim**

13          Petitioner next contends that the trial court impermissibly excluded evidence that

14   would have impeached the victim.  The state court addressed this claim as follows:

15          Defendant predictably contends that the evidence of the
       circumstances surrounding the victim's 2005 arrest was of such
16     monumental probative value in resolving the credibility contest between
       his version of events and the victim's that Judge White's exclusion of it
17     was an abuse of discretion and a violation of his constitutional right to
       present a defense.  Neither of these propositions is correct.  (footnote
18     omitted).

19          We will not belabor defendant's argument involving the manner in
       which Judge White exercised his discretion.  It does not amount to
20     anything more than an effort to view the facts differently, without
       establishing that Judge White's resolution was beyond the bounds of
21     reason.  That the victim wound up in the back seat of an old flame's car,
       kissing him when in a state of what was apparently advanced inebriation
22     provides little if any insight on her willingness to orally copulate a total
       stranger in order to obtain drugs nine years earlier.  Her reluctance to
23     inform her husband of the arrest similarly does not give any indication of
       whether she would be likely to lie when directly asked about it in court or
24     elsewhere.  Moreover, determining the exact nature of the circumstances
       under which the drunken stolen kisses took place would have led the
25     proceedings down an extensive rabbit trail after this minuscule prey.  The
       potential of prejudice to the prosecution from having the jury view the
26     victim as dissolute for reasons having nothing to do with the material

11

1    issues at trial has the greater weight in the balance.  We accordingly
     decline to find any abuse of discretion in the ruling.

2
         As for defendant's inevitable claim that the ordinary application of
3    our rules of evidence deprived him of his constitutional right to present a
     defense, this is true only where it results in the evisceration of a defense,
4    or where a rule mandates the general exclusion of a category of evidence
     on an arbitrary basis rather than as the result of an individualized exercise
5    of discretion. (citations omitted).  Neither circumstance is present.

6        A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

7    transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

8    1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not

9    available for alleged error in the interpretation or application of state law, such as the ruling to

10   exclude evidence at issue here.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d

11   805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas

12   corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371,

13   377 (1972).

14       However, a "claim of error based upon a right not specifically guaranteed by the

15   Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

16   infects the entire trial that the resulting conviction violates the defendant's right to due process."

17   Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

18   Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas

19   relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal

20   habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due

21   process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d

22   971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see

23   also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   To raise such a claim in a

24   federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of

25   justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95

26   (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

1    In this case, the court finds that the state court's denial of this claim was neither

2    contrary to nor based on an unreasonable application of these standards.  As the state court

3    observed, the proffered impeachment was distant in time, would have confused the jury with a

4    significant side-trial, and was potentially prejudicial to the prosecution.  On this record,

5    particularly given the dubiousness of the proffered evidence's tendency to impeach the victim,

6    the state court reasonably concluded that excluding the evidence did not result in a complete

7    miscarriage of justice.

8    **E.    Sufficiency-of-the-Evidence Claim**

9    Petitioner contends that the evidence was insufficient to establish the use of force.

10   When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is

11   available if it is found that, upon the record of evidence adduced at trial, viewed in the light most

12   favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a

13   reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[3]  Under Jackson, the court

14   must review the entire record when the sufficiency of the evidence is challenged on habeas.  See

15   id.  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and

16   to draw reasonable inferences from basic facts to ultimate facts."  Id.  "The question is not

17   whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors

18   could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th

19   Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  The federal habeas court

20   determines sufficiency of the evidence in the context of the substantive elements of the criminal

21   offense, as defined by state law.  See Jackson, 443 U.S. at 324 n.16.

22

23   [3]    Even though Jackson was decided before AEDPA's effective date, this expression
     of the law is valid under AEDPA's standard of federal habeas corpus review.  A state court
24   decision denying relief in the face of a record establishing that no rational jury could have found
     proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable
25   application of the law as outlined in Jackson.  Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir.
     2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of
26   review because a rational jury could make the finding at issue).

1      The court finds that the state court's denial of this claim was neither contrary to

2  nor based on an unreasonable application of these standards.  As respondent notes, there was

3  evidence that petitioner brandished a firearm to gain entry into the victim's car.  There was also

4  evidence that petitioner held the gun to the victim's head and forced her to orally copulate him.

5  A rational jury could certainly find from this evidence that petitioner committed the crime by

6  means of force, violence, duress, or fear of immediate bodily injury.  See People v. Griffin, 33

7  Cal.4th 1015 (2004); see also People v. Iniquez, 7 Cal.4th 847 (1994).

8      **F.      "Illegal Sentence" Claim**

9      Petitioner contends that his sentence was imposed in violation of state law

10  governing what may be counted for purposes of sentence enhancements.  As respondent correctly

11  notes, and as discussed above, federal habeas relief is not available for alleged errors in the

12  interpretation or application of state law.

13

14      **IV.  CONCLUSION**

15      Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the

16  court has considered whether to issue a certificate of appealability.  Before petitioner can appeal

17  this decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c); Fed. R. App. P.

18  22(b).  Where the petition is denied on the merits, a certificate of appealability may issue under

19  28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

20  constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

21  appealability indicating which issues satisfy the required showing or must state the reasons why

22  such a certificate should not issue.  See Fed. R. App. P. 22(b).  Where the petition is dismissed

23  on procedural grounds, a certificate of appealability "should issue if the prisoner can show:  (1)

24  'that jurists of reason would find it debatable whether the district court was correct in its

25  procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition

26  states a valid claim of the denial of a constitutional right.'"  Morris v. Woodford, 229 F.3d 775,

780 (9th Cir. 2000) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).

For the reasons set forth above, the court finds that issuance of a certificate of appealability is not

warranted in this case.

Accordingly, IT IS HEREBY ORDERED that:

1.      Petitioner's amended petition for a writ of habeas corpus (Doc. 15) is

denied;

2.      The court declines to issue a certificate of appealability; and

3.      The Clerk of the Court is directed to enter judgment and close this file.


DATED:  September 29, 2015


_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE